# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DONALD EDWARD BENTON, | Case No.: 2:10-cv-00907-RLH-PAL |
| Plaintiff, | **O R D E R** |
| vs. | (Motion to Dismiss–#8; Motion to Dismiss–#14; Motion to Dismiss–#25; Motion to Dismiss–#26; Motion to Dismiss–#27; Motion to Strike–#88; Motion to Amend/Correct Order–#98; Motion to Strike–#101; Motion for District Judge to Reconsider–#106; Counter Motion and Request for Orders–#107; Motion to Strike–#110; Motion to Strike–#113; Motion to Dismiss–#115; Motion to Revise Order–#122; Motion to Strike–#129; Motion to Deny/Strike–#162) |
| TIMOTHY S. CORY, in his individual capacity as trustee; MATTHEW C. ZIRZOW, as shareholder; WILLIAM M. NOALL, as shareholder; GREGORY E. GARMAN, as managing shareholder; CICI CUNNINGHAM, as attorney to trustee; CHRISTINE A. ROBERTS, as attorney to trustee; PHILIP S. GERSON, as supervising partner; and AUGUST B. LANDIS, in his individual capacity as United States Trustee, | |
| Defendants. | |

In this Order, the Court considers five motions to dismiss filed by Defendants Timothy S. Cory, CiCi Cunningham, Christine Roberts, Gregory E. Garman, William M. Noall, Matthew C. Zirzow, Philip S. Gerson, and August B. Landis. (Dkt. ##8, 14, 25, 26, 27, 115.) In considering these motions, the Court has also reviewed the oppositions, replies, errata, declarations, joinders, and exhibits submitted by the parties. (Dkt. ##20, 28, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 45, 48, 49, 50, 66, 86, 89, 90, 96, 103, 138.)

1

The Court also considers motions to strike filed by Plaintiff Donald Edward Benton and Defendant Philip S. Gerson. (Dkt. ##88, 101, 110, 113, 129, 162.) In considering these motions, the Court has also reviewed the oppositions and replies submitted by the parties. (Dkt. ##93, 97, 102, 134, 136, 160.)

The Court also considers four motions which Benton filed asking the Court to reconsider its own Order (#82) and orders issued by Magistrate Judge Peggy A. Leen. (Dkt. #98, Mot. to Amend/Correct; Dkt. #106, Mot. for Dist. Judge to Reconsider Order (#16); Dkt. #107, Counter Mot. & Request for Orders; Dkt. #122, Mot. to Revise Order.) In considering these motions, the Court has also reviewed the oppositions, replies, and joinder submitted by the parties. (Dkt. ##98, 104, 109, 111, 112, 121, 125, 126, 127, 130, 135, 139, 141, 142, 143, 146, 147, 153, 155, 156.)

## BACKGROUND

This dispute arises from Plaintiff Donald Edward Benton's allegations that Defendants acted improperly during the course of his Chapter 7 bankruptcy proceedings. (*See generally* Dkt. ##33–41, Decl. Ex. 2–83, *In re Donald Edward Benton f/k/a Donald E. Bender*, No. 2:05-BK-17562-MKN, discharged Aug. 13, 2009.) Benton was formerly known as both Donald Eugene Bender and Donald Robert Benton. Although Benton appears *pro se* in this matter as a self-declared "private attorney general," he was at one time admitted to the practice of law in California. (Dkt. #33, Decl. Ex. 1, State Bar of Cal. Atty. Search.)

In January 2000, Deanette Bender filed for divorce from Benton in Wyoming and the divorce was finalized later that year. The divorce decree required Benton to make alimony payments to Bender, however, Benton stopped making these payments in 2003. Bender subsequently sought and received a judgment against Benton in the Wyoming state court. In August 2005, Benton filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada ("Bankruptcy Court"). Bender subsequently filed a complaint for non-dischargeability of debts to protect her Wyoming judgement against Benton.

AO 72
(Rev. 8/82)

On February 6, 2006, the Bankruptcy Court ruled in favor of Bender finding that the Wyoming judgment was non-dischargeable in Benton's bankruptcy case. On February 14, 2006, the following individuals participated in a settlement conference with the Honorable Thomas T. Glover, Bankruptcy Judge for the Western District of Washington sitting by designation: Benton; his new wife and nondebtor, Vija Z. Hamilton; Hamilton's attorney, Mark A. Kemp; the Chapter 7 bankruptcy trustee, Defendant Timothy S. Cory; the trustee's counsel, Defendant CiCi Cunningham; Bender; and Bender's counsel, Defendant Matthew C. Zirzow. (Dkt. #35, Decl. Ex. 33, Hr'g Tr.) The parties orally agreed to the principle terms of a settlement concerning Bender's claims. Judge Glover extensively questioned Benton on the record about his intent to settle and gave him an opportunity to refuse to settle and consult with counsel. (*Id.* Hr'g Tr. 13–18.) Benton agreed to the settlement on the record. In July 2006, the parties executed a formal settlement agreement, which states in relevant part:

> Subject to the dismissal of all claims Creditor [Bender] and Trustee . . . Debtor [Benton], Ms. Hamilton, and the Plotinus Trust hereby release, acquit, and forever discharge Creditor and Trustee, and their counsel, and all of their past and present successors, assigns, agents and employees, of and from all claims, losses, causes of action, judgments and/or orders, costs, expenses, attorneys' fees, liabilities, indemnities, subrogations (contractual or equitable), duties, and obligations of any nature whatsoever in law or in equity, whether known or unknown, fixed or contingent, arising prior to the date hereof, including but not limited to any which are in any way connected with the Wyoming Judgment . . . .

(Dkt. #36, Decl. Ex. 40, Compromise and Settlement and Mutual Release ("Settlement Agreement") ¶ IX. B.)

Unsatisfied with the Bankruptcy Court's rulings in his case, Benton filed several motions and appeals of the Bankruptcy Court's rulings in the United States District Court for the District of Nevada ("District Court") starting in early February 2006. *See generally*, *In re Donald Edward Benton*, No. 2:06-cv-00117-LDG-PAL; *In re Donald Edward Benton*, No. 2:06-cv-00118-KJD-RJJ; *Bender v. Benton (BK Appeal)*, No. 2:06-cv-00134-KJD-RJJ; *Bender v. Benton*, No. 2:06-cv-0061-RCJ-LRL; *In re Donald Benton*, No. 2:06-cv-00195-LDG-GWF; *Benton v. Cory*, No. 2:06-cv-00845-KJD-GWF; *In re Donald Edward Benton*, No. 2:06-cv-00846-JCM-LRL.

Notwithstanding these filings, his case proceeded in the Bankruptcy Court. The parties eventually stipulated to dismiss the District Court actions pursuant to the Settlement Agreement, and each action was closed by September 2006.

In August 2007, long after the Settlement Agreement was approved and executed, Benton filed a motion in the Bankruptcy Court seeking removal of Defendant Cory as Chapter 7 trustee over his bankruptcy case. Benton argued that Cory had breached his fiduciary duty as trustee by misleading him, violating federal bankrupcy rules, and ultimately coercing settlement of Bender's claims for $98,500.00—the amount which he agreed to pay her in the Settlement Agreement. After examining the transcript of the settlement conference, the Honorable Mike K. Nakagawa, Bankruptcy Judge, denied Benton's motion and further held, "there is no basis on which to find that [Benton] was forced into settlement." (Dkt. #40, Decl. Ex. 77, Bankr. D. Nev. Order (#301) 7, Dec. 5, 2008.) Benton did not appeal Judge Nakagawa's ruling.

On December 17, 2007, Benton filed another motion in the District Court to withdraw reference of his bankruptcy case wherein he claimed that the Bankruptcy Court extorted the $98,500.00 which he had agreed to pay in the Settlement Agreement. *See generally*, *In re Donald Edward Benton*, No. 2:07-cv-01686-KJD-RJJ. Benton continued to submit "multiplicative and repetitive filings," *Id.*, Dkt. #48, D. Nev. Order, July 24, 2008, until the Honorable Kent J. Dawson, District Court Judge, denied Benton's motion to withdraw reference and closed the case. *Id.*, Dkt. #54, Hr'g Mins., Sept. 1, 2009; Dkt. #57, D. Nev. Order, Sept. 14, 2009. Benton proceeded to appeal Judge Dawson's decision to the U.S. Court of Appeals for the Ninth Circuit and the U.S. Supreme Court, both of which denied his appeals. When Benton continued to submit filings after the denial, the Ninth Circuit ordered that "[n]o further filings shall be accepted in [Benton's] closed case." (Dkt. #41, Decl. Ex. 89, 9th Cir. Order, Feb. 24, 2010.) Nevertheless, Benton returned his focus to the District Court where he filed two motions in April 2010 asking Judge Dawson to authorize a settlement conference. Judge Dawson denied these

/

4

motions (Dkt. #40, Decl. Ex. 84, Hr'g Tr. 16–18, Sept. 1, 2009) and ordered that no further filings be accepted in the closed action.

Benton filed the instant case on June 14, 2010. (Dkt. #1, Compl.) Benton subsequently amended his complaint to add Defendants Noall, Garman, and Gerson. Benton alleges the following twenty-two causes of action: (1) violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution; (2) violation of the Seventh Amendment to the United States Constitution; (3) civil rights violations under 18 U.S.C. §§ 1981 and/or 1983; (4) civil rights violations under 18 U.S.C. §§ 1981 and/or 1985; (5) violations of 18 U.S.C. §§ 1961–1968, RICO; (6) conspiracy causing personal injury; (7) false imprisonment; (8) violation of 18 U.S.C. §§ 1341–1347; (9) fraud and false statements; (10) perjury and/or obstruction of justice; (11) conspiracy to obstruct justice under 18 U.S.C. §§ 371–373; (12) breach of covenant of good faith and fair dealing; (13) breach of fiduciary duty; (14) misprision of felony under 18 U.S.C. § 4; (15) negligence per se; (16) defamation; (17) intentional infliction of emotional distress and/or mental distress; (18) principals and accessories after the fact under 18 U.S.C. §§ 2–3; (19) abuse of process; (20) obstruction of justice by deception under 18 U.S.C. § 1512(b), (c), (d), and (k); (21) obstruction of the federal courts under 18 U.S.C. § 1503; and (22) violation of 28 U.S.C. § 586 and C.F.R. 58.6 by "dishonesty, deceit, and fraud." (Dkt. #6, Amend. Compl., July 6, 2010.)

Each defendant Benton names in this action had either direct or indirect involvement in his bankruptcy case. Cory was the appointed Chapter 7 bankruptcy trustee. Defendants CiCi Cunningham, Christine A. Roberts, and Philip S. Gerson are attorneys who worked for the law firm Olson, Cannon, Gormley, & Desruisseaux ("OCG&D"). Cunningham and Roberts represented Cory in his capacity as trustee. Gerson did not personally represent Cory, however, Benton now sues Gerson as OCG&D's managing partner and Cunningham and Roberts' supervisor. Defendants William M. Noall, Gregory E. Garman, and Matthew C. Zirzow are attorneys who work for the law firm Gordon Silver. Defendants Noall and Zirzow represented Bender in pursuing her alimony claim against Benton in his bankruptcy case. Defendant Garman

AO 72
(Rev. 8/82)

did not personally represent Bender but is Gordon Silver's managing partner, thus, Benton now sues Garman as Noall and Zirzow's supervisor.  Finally, Defendant August B. Landis was the Assistant United States Attorney who oversaw Benton's bankruptcy case for the United States Trustee.

Defendants now ask the Court to dismiss Benton's claims.  Benton and Gerson also ask the Court to strike certain documents from the record.  Finally, Benton asks the Court to reconsider certain orders.  For the reasons discussed below, the Court grants Defendants' motions to dismiss with prejudice, denies Gerson and Benton's motions to strike as moot, and also denies Benton's various motions for reconsideration as moot.

## DISCUSSION

As a preliminary matter, the Court takes judicial notice of all filings on record in Benton's various actions in the Bankruptcy Court, District Court, and the Ninth Circuit.   Rule 201 of the Federal Rules of Civil Procedure provides for judicial notice of adjudicative facts that are, among other things, "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Judicial notice is properly taken of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *Biggs v. Terhune*, 334 F.3d 910, 916 n.3 (9th Cir. 2003), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010); *see also Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (taking judicial notice of state appellate court opinion and the parties' briefs filed therein and in the trial court to determine whether an issue was actually litigated and necessarily decided in the state court for issue preclusion purposes).

**I.     Defendants' Motions to Dismiss**

Defendants ask the Court to dismiss Benton's claims pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (4), (5), (6), and 4(m).  In the alternative, Defendants Noall, Garman, and Zirzow ask the Court to grant summary judgment against Benton's claims.  After considering the motions and related filings, the Court concludes that Rules 12(b)(1) and 12(b)(6) best apply to

1  Benton's claims. The Court will first address Rule 12(b)(1) with regard to the claims against
2  Defendants Cory, Landis, Cunningham, and Roberts, and will then address Rule 12(b)(6) with
3  regard to the claims against Defendants Gerson, Noall, Garman, and Zirzow.

4        **A.**      **Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)**

5  "In this action, as in all actions before a federal court, the necessary and
6  constitutional predicate for any decision is a determination that the court has jurisdiction—that is
7  the power—to adjudicate the dispute." *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir. 1998).
8  Rule 12(b)(1) allows defendants to seek dismissal of a claim or action for a lack of subject matter
9  jurisdiction. Dismissal under Rule 12(b)(1) is appropriate if the complaint, considered in its
10 entirety, fails to allege facts on its face that are sufficient to establish subject matter jurisdiction.
11 *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation*, 546 F.3d 981, 984–85 (9th
12 Cir. 2008). Although the defendant is the moving party in a motion to dismiss brought under Rule
13 12(b)(1), the plaintiff is the party invoking the court's jurisdiction. As a result, the plaintiff bears
14 the burden of proving that the case is properly in federal court. *McCauley v. Ford Motor Co.*, 264
15 F.3d 952, 957 (9th Cir. 2001) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178,
16 189 (1936)).

17 Federal courts are courts of limited jurisdiction. *Owen Equip. & Erection Co. v.*
18 *Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular
19 case unless the contrary affirmatively appears." *Stock West, Inc. v. Confederated Tribes of the*
20 *Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). Thus, federal subject matter
21 jurisdiction must exist at the time an action is commenced. *Mallard Auto. Grp., Ltd. v. United*
22 *States*, 343 F.Supp.2d 949, 952 (D. Nev. 2004). A district court may *sua sponte* raise the issue of
23 subject matter jurisdiction and must dismiss a case if no subject matter jurisdiction exists. Fed. R.
24 Civ. P. 12(h). Because subject matter jurisdiction goes to the power of the court to hear a case, it
25 is a threshold issue and may be raised at any time and by any party. Fed. R. Civ. P. 12(b)(1).
26 Therefore, even if the parties do not address the question of subject matter jurisdiction, district

courts are still under a special obligation to satisfy jurisdictional questions. *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004) (holding that a district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments).

**1.   Defendants Cory, Cunningham, Roberts, and Landis**

Defendants Cory, Cunningham, and Roberts have one thing in common: they were each appointed by the Bankruptcy Court to perform services related to Benton's bankruptcy case. (Dkt. #14, Mot. Ex. A, Notice of Chpt. 7 Bankr. Case, Aug. 4, 2005; Ex. B., Bankr. D. Nev. Order, Oct. 24, 2005.) These three Defendants argue that this Court lacks subject matter jurisdiction over Benton's claims against them because he has not obtained leave from the Bankruptcy Court to sue them for acts done in their official capacity as the *Barton* doctrine requires. *See Barton v. Barbour*, 104 U.S. 126 (1881). In addition, Cory, Cunningham, and Roberts argue that they are entitled to quasi-judicial immunity from Benton's suit. Although Landis asks the Court to dismiss Benton's claims for a failure to execute proper service, the Court concludes that Landis is entitled to quasi-judicial immunity from suit (as well as Cory, Roberts and Cunningham). The Court will discuss the *Barton* doctrine and quasi-judicial immunity in turn.

**a.   The *Barton* Doctrine**

The Ninth Circuit has found the application of the *Barton* doctrine appropriate in situations where a party initiates an action against a bankruptcy trustee. *In re Crown Advantage, Inc.*, 421 F.3d 963, 970 (9th Cir. 2005). Established by the Supreme Court over a century ago, the *Barton* doctrine provides that a party must first obtain leave of the court before bringing a suit against a court-appointed receiver. *Barton*, 104 U.S. at 127. The *Barton* doctrine applies in bankruptcy situations because a "trustee in bankruptcy is a statutory successor to the equity receiver, and just like the equity receiver, a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." *In re Crown Advantage*, 421 F.3d at 970 (quoting *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998) (internal quotation marks omitted)). Consequently, "a party

8

1  must first obtain leave of the bankruptcy court before it initiates an action in another forum against
2  a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the
3  officer's official capacity." *Id.*  In addition, the *Barton* doctrine applies to counsel for a
4  bankruptcy trustee because they are also court appointed officers who represent the estate.  *In re*
5  *Delorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993) (citing *In re Balboa Improvements, Ltd.*,
6  99 B.R. 966, 970 (B.A.P. 9th Cir. 1989).  Thus, as a matter of law, the trustee's counsel is the
7  functional equivalent of a trustee where they act at the direction of the trustee and for the purpose
8  of administering the estate or protecting its assets.  *Id.*

9  Benton argues that he need not seek leave of the Bankruptcy Court to pursue his
10 claims against Cory, Cunningham, and Roberts.  He maintains that the *Barton* doctrine is
11 inapplicable because Cory and his counsel were acting beyond the scope of a trustee's authority
12 when they committed the alleged acts.  Benton claims that Cory and his counsel violated the
13 Federal Rules of Bankruptcy Practice by, among other things, creating a forced settlement
14 agreement and conspiring with other Defendants to deprive Benton of statutory exemptions.
15 However, each alleged misdeed falls squarely within Cory's duties as court-appointed trustee and
16 Cunningham and Roberts' duties as court-appointed counsel to the trustee, thus, the *Barton*
17 doctrine applies.[1]  Because Benton has not obtained leave from the Bankruptcy Court to pursue
18 claims against these three Defendants pursuant to the *Barton* doctrine, this Court lacks subject
19 matter jurisdiction over his claims.  Accordingly, the Court dismisses Benton's claims against
20 Cory, Cunningham, and Roberts.
21 /

---

[1] In addition, Benton argues that the Court should apply a five-question analysis set forth by *In re Kashani*, 190 B.R. 875, 886–87 (B.A.P. 9th Cir. 1995), to determine whether his claims have merit.  However, that particular analysis is directed to the appointing bankruptcy court for situations when a proposed plaintiff submits a proposed complaint against a trustee for pre-approval.  Such is not the situation here as Benton has already filed suit and this Court is not the same as the Bankruptcy Court that appointed Cory.  Furthermore, the *Barton* doctrine precludes the Court from applying that analysis.  Thus, the Court will not address *In re Kashani*'s five-question analysis.

### b. Quasi-Judicial Immunity

In a bankruptcy proceeding, certain individuals who act under the authority of the bankruptcy judge are entitled to quasi-judicial immunity for "'actions that are functionally comparable to those of judges, i.e., those functions that involve discretionary judgment'." *Balser v. Dept. of Justice*, 327 F.3d 903, 909 (9th Cir. 2003) (quoting *Curry v. Castillo (In re Castillo)*, 297 F.3d 940, 947 (9th Cir. 2002). The Ninth Circuit has extended such immunity to cover a private trustee and his counsel, *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986), as well as counsel representing the United States Trustee, *Balser*, 327 F.3d at 909. Because they perform an integral part of the judicial process, these individuals are entitled to "derived judicial immunity" absent evidence showing that the person acted outside their course of employment. *Lonneker Farms*, 804 F.2d at 1097.

Defendants are each entitled to quasi-judicial immunity from Benton's lawsuit. All four Defendants assumed roles in Benton's bankruptcy proceeding that were part of the judicial function of the bankruptcy court: Cory as a Chapter 7 trustee, Cunningham and Roberts as counsel to the trustee, and Landis as the acting Assistant United States Trustee. Without exception, Benton's factual allegations related to these four Defendants involve conduct which they undertook in their official capacity. His claims amount to nothing more than legal conclusions about his grievances. Thus, Benton's allegations are insufficient to demonstrate that Cory, Cunningham, Roberts, and Landis acted outside the limits of their derived judicial immunity. The Court therefore dismisses all claims against Cory, Roberts, Cunningham, and Landis.

### B. Failure to State a Valid Claim Under Rule 12(b)(6)

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic

recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (internal citation omitted).

In *Iqbal*, the Supreme Court recently clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 1950. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 1949. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 1950. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 1949. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id*. (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, plaintiff's complaint must be dismissed. *Twombly*, 550 U.S. at 570.

**2.   Remaining Defendants Noall, Garman, Zirzow, and Gerson**

Benton's claims boil down to one key assertion: that Defendants exacted a manipulated Settlement Agreement and extorted $98,500.00 from him and Hamilton, his nondebtor wife, by means of a "vicious and coordinated attack." (*See e.g.*, Dkt. #6, Am. Compl. ¶¶ 21, 27, 29, 36, 37, 40.) Each claim Benton asserts is based on alleged conspiratorial acts which Defendants[2] committed prior to July 14, 2006—the date Benton executed the Settlement

---

[2] Because Defendants Noall, Garman, and Gerson are employed by the law firms which represented either the trustee or Bender, the Court finds that they are logically covered by the Settlement Agreement's mutual release whether or not they personally appeared in Benton's bankruptcy proceedings. Furthermore, Benton makes no specific allegations against Noall, Garman, and Gerson other than to note, "Wherever Zirzow is referenced,

11

1  Agreement and mutually released all claims and causes of action against Bender, Cory, and their
2  counsel. (Dkt. #36, Decl. Ex. 40., ¶ IX. B.)  As a result, Benton cannot show that he is entitled to
3  relief on the claims he alleges in this suit.  Although Benton later argued to the Bankruptcy Court
4  that he was mislead into signing the Settlement Agreement, Judge Nakagawa concluded that he
5  was not forced into settlement. (Dkt. #40, Decl. Ex. 77, Bankr. Ct. Order 7, Dec. 5, 2008.)  Benton
6  did not appeal this ruling.  Thus, the Settlement Agreement clearly precludes Benton from alleging
7  any claims which arise out of the disputed Wyoming judgment and its subsequent litigation in
8  Benton's bankruptcy case.  The Court therefore finds that Benton fails to state a valid claim
9  against the remaining Defendants Gerson, Noall, Garman, and Zirzow.  Accordingly, the Court
10 grants Defendants' motions to dismiss Benton's claims with prejudice and directs the Clerk of the
11 Court to close this case.

12 **II.     Motions to Strike and for Reconsideration**

13         Because the Court grants Defendants' motions to dismiss, the parties' outstanding
14 motions to strike (Dkt. ##88, 101, 110, 113, 129, 162) and for reconsideration (Dkt. ##98, 106,
15 107, 122) are now moot.  The Court therefore denies these motions as moot.

16 **III.    Order to Show Cause**

17         The All Writs Act, 28 U.S.C. § 1651(a), empowers federal district courts to enjoin
18 vexatious litigants who have a history of abusing the court's limited resources.  *De Long v.*
19 *Hennessey*, 912 F.2d 1144, 1147 (9th Cir. 1990) (citing *Tripati v. Beaman*, 878 F.2d 351, 352
20 (10th Cir. 1989)).  Under the All Writs Act, a district court can order a person with a lengthy
21 history of abusive litigation—a vexatious litigant—to obtain leave of the court before filing any
22 future lawsuits.  *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).
23 However, the Ninth Circuit has cautioned the district courts by recognizing that vexatious litigant
24 orders are a rare and extreme remedy.  *De Long*, 912 F.2d at 1147 (citation omitted).

25 ─────────────────────
26 Noall and or Garman are included.  Wherever Cunningham is referenced, Roberts and/or Gerson are included."
   (Dkt. #6, Am. Compl. ¶ 40.)  This conclusory statement does not constitute a valid claim for relief.

1    In deciding whether or not to restrict a litigant's access to the courts, "[u]ltimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Molski v. Mandarin Touch Rest.*, 347 F.Supp.2d 860, 863–64 (C.D. Cal. 2004) (quoting *Safir v. United States Lines, Inc.*, 792 F.2d 19, 23 (2nd Cir. 1986)).  In doing so, the Court should examine five factors: (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing, or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.  *Id.* at 864.

**A.    Litigant's History of Litigation**

A "vexatious suit" is a "lawsuit instituted maliciously and without good cause." *Id.* (citing Black's Law Dictionary 1596 (8th ed. 2004)).  The Court may consider several factors when determining whether a litigant's history of litigation amounts to a pattern of harassing litigation.  One factor is the sheer volume of lawsuits and court filings. *See De Long*, 912 F.2d at 1148 (stating that in order to issue a pre-filing order, "[a]t the least, the record needs to show, in some manner, that the litigant's activities were numerous or abusive").  Although litigiousness alone is insufficient to justify a restriction on filing activities, it is a factor the Court considers indicative of an intent to harass. *Mandarin Touch Rest.*, 347 F.Supp.2d at 864.

After reviewing the record in Benton's various actions adjudicated by the Bankruptcy Court, District Court, the Ninth Circuit, and an opinion of the Wyoming Supreme Court, *Bender v. Uinta Cty. Assessor*, 14 P.3d 906 (Wyo. 2000), this Court concludes that Benton has a clear history of vexatious litigation.  In fact, his propensity towards harassing litigation began long before Benton came to Nevada.  In *Uinta County Assessor*, Benton (who went by Bender at that time) appealed a state agency's decision to affirm a county assessor's calculation of his

AO 72
(Rev. 8/82)

1  property taxes to the Wyoming Supreme Court. *Id.* He had already appealed the calculation to the
2  state agency twice; thus, the court determined that Benton was collaterally estopped from
3  challenging the calculation because it constituted a relitigation of an issue that had been fully and
4  finally adjudicated. *Id.* at 911. The court also noted that Benton appeared as an appellant in
5  "numerous cases of various kinds and character" in the two years before the *Uinta County*
6  *Assessor* case. *Id.* The court described Benton by saying, "[h]e seems to personify the term
7  'litigious' to the effect it describes one who is 'fond of litigation; prone to engage in suits'" and
8  found sanctions appropriate for his "intentional rehash" of previously litigated cases. *Id.* (citing
9  Black's Law Dictionary 934 (6th ed. 1990)).

10        Benton's tendency towards rehashing adjudicated issues continues here in Nevada.
11  Throughout the course of his bankruptcy proceedings, Benton submitted at least six separate
12  motions to withdraw reference from the Bankruptcy Court to the District Court—all of which were
13  based upon the same allegations as the current action. In each action, Benton filed an
14  extraordinary number of motions, many if not all of which were baseless. After Judge Dawson
15  concluded that Benton continually submitted "multiplicative and repetitive filings," *In re Donald*
16  *Edward Benton*, No. 2:07-cv-01686-KJD-RJJ, D. Nev. Order (#48), July 24, 2008, Judge Dawson
17  eventually found it necessary to order the Clerk of the Court to refuse future filings from Benton
18  after he continued to file motions in his closed case. When Benton appealed Judge Dawson's
19  rulings to the Ninth Circuit, he repeatedly submitted filings to the Ninth Circuit even after it
20  denied his appeal and closed the case. In response, the Ninth Circuit ordered that "[n]o further
21  filings shall be accepted in this closed case." (Dkt. #41, Decl. Ex. 89, 9th Cir. Order, Feb. 2010.)
22  This disregard for judicial resources has continued in this Court. In the five months since he
23  commenced this current action, Benton has filed twenty-two motions. (Dkt. ##4, 5, 7, 19, 21, 23,
24  24, 58, 60, 62, 70, 87, 88, 98, 101, 105, 106, 107, 108, 122, 137, 151.) Rather than wait for the
25  Court to rule on a motion, Benton simply files additional motions in an attempt to prod the Court
26  into considering his motions within his time frame. The Court therefore finds that Benton's

14

1  numerous filings in the Bankruptcy Court, District Court, and Ninth Circuit support the conclusion
2  that Benton has a lengthy history of vexatious litigation.

3      **B.**    **Litigant's Motive**

4      The next factor for the Court to consider is Benton's motive in bringing this
5  lawsuit. Although raising claims against these Defendants alone is not unethical or vexatious, it is
6  consistent with his overall pattern of harassing behavior. Irrespective of the jurisdictional and
7  immunity issues or failure to state plausible claims in this case, Judge Nakagowa extensively
8  examined the propriety of the parties' conduct in the settlement conference and found no basis for
9  Benton's allegation that he was forced into settlement. (Dkt. #40, Decl. Ex. 77, Bankr. D. Nev.
10 Order (#301) 7.) Benton did not appeal Judge Nakagawa's ruling, but instead filed numerous
11 motions for withdrawal of reference, appeals to the Ninth Circuit and U.S. Supreme Court, and
12 eventually brought this case. Rather than recognizing the settled legal issues involved in his
13 allegations, Benton files this lawsuit and nearly two dozen motions thereby forcing Defendants to
14 expend significant amounts of time and energy simply opposing his motions. His behavior does
15 not support a good faith expectation of prevailing on the merits of his claim, rather it demonstrates
16 that he intends to torment everyone who was involved in his bankruptcy case (and a few who were
17 not) with constant litigation and defense costs. Thus, the Court concludes that Benton's
18 motivation is punish to Defendants.

19     **C.**    **Representation by Counsel**

20     The next factor is whether or not Benton is represented by counsel. Although
21 courts are generally protective of *pro se* litigants, this same protection does not apply to litigants
22 represented by counsel. *Mandarin Touch Rest.*, 347 F.Supp.2d at 864. Despite the fact that
23 Benton appears *pro se* in this matter, the Court recognizes that he is legally trained and was
24 licensed to practice law in California at one time. Judge Nakagawa also recognized Benton as "a
25 trained attorney and not a lay person incapable understanding the purpose of a settlement
26 /

AO 72
(Rev. 8/82)

1  conference or the terms of a settlement agreement." (Dkt. #40, Decl. Ex. 77, Bankr. D. Nev. Order
2  (#301) 6–7.) Thus, the Court finds that this factor also weighs against Benton.

### D.  Burden on the Courts

The fourth factor for the Court to consider is whether Benton has caused needless expense to other parties or unnecessarily burdened the courts. *Id.* In light of the Court's previous analysis concerning Benton's nearly two dozen motions in this case and filings in closed cases, the Court concludes that this factor clearly weighs against him.

### E.  Adequacy of Other Sanctions

The last factor for the Court to consider is whether sanctions other than a pre-filing order could adequately protect the Court and other parties. For the reasons the Court has already discussed at length, the Court concludes that no alternative sanctions will suffice. The only effective way to curb Benton's propensity towards repetitious litigation is to require him to seek leave of the Court by filing a copy of this Court's pre-filing order with every new complaint that he seeks to file.

In sum, after reviewing the record in Benton's various actions adjudicated by the Bankruptcy Court, District Court, Ninth Circuit, and the *Bender v. Uinta County Assessor* opinion by the Wyoming Supreme Court, this Court concludes that Benton is a vexatious litigant. Benton's willful submission of repetitive motions and failure to comply with the terms of the Settlement Agreement, or the rulings of the various courts, constitute abusive litigation practices that have interfered with the Court's ability to hear this case, delayed litigation, disrupted the Court's timely management of its docket, wasted judicial resources, and threatened the integrity of the Court's orders and the orderly administration of justice. The Court finds that a pre-filing order is justified and necessary to prevent Benton from further abusing the legal system and harassing the parties involved in his bankruptcy proceeding. Therefore, the Court orders Benton to show cause, in writing, **no later than 4:00 p.m. on December 17, 2010**, as to why this Court should not enter an order requiring him to seek leave of the Court before filing any new lawsuits.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that:

- Defendants Timothy S. Cory, CiCi Cunningham, Christine Roberts' Motion to Dismiss (#8) and Motion to Dismiss (#14); Defendants Gregory E. Garman, William M. Noall, Matthew C. Zirzow's Motion to Dismiss (#25); Defendant Philip S. Gerson's Motion to Dismiss (#26) and Motion to Dismiss (#27); and Defendant August B. Landis' Motion to Dismiss (#115) are GRANTED with prejudice;

- Plaintiff Donald Edward Benton's Motion to Strike (#88), Motion to Strike (#101), and Motion to Deny or Strike (#162); and Defendant Philip S. Gerson's Motion to Strike (#110), Motion to Strike (#113), and Motion to Strike (#129) are DENIED as moot,

- Plaintiff Donald Edward Benton's Motion to Amend/Correct Order–#98, Motion for District Judge to Reconsider (#106), Counter Motion and Request for Orders (#107), and Motion to Revise Order (#122) are DENIED as moot.

IT IS FURTHER ORDERED that the Clerk of the Court close this case.

IT IS FURTHER ORDERED that Plaintiff Donald E. Benton **SHOW CAUSE in WRITING** to the undersigned **no later than 4:00 p.m. on December 17, 2010**, as to why the Court should not issue an order forthwith, forbidding him to file any new complaints or petitions without first seeking leave of the Court and directing the Clerk of Court to reject and refuse to file any document filed on a close case or in violation of such an order.

Dated: December 3, 2010.

_____
ROGER L. HUNT
Chief United States District Judge